JULIA GURAL, PLAINTIFF-APPELLANT, v. JULIUS C.
ENGLE, DEFENDANT-RESPONDENT.

Submitted October 7, 1941—Decided March 20, 1942.

Before Brogan, Chief Justice, and Justice Heher.

For the appellant, *Adolph L. Engelke.*

For the respondent, *Edmund A. Hayes.*

The opinion of the court was delivered by

Heher, J. Plaintiff recovered a money judgment against one Polikan. The sheriff of the County of Middlesex arrested the judgment debtor under a writ of *capias ad satisfaciendum* issued thereon, and thereafter discharged him from custody upon the delivery of what the debtor considers an inventory and bond in keeping with the provisions of the act relating to insolvent debtors. *R. S.* 1937, 2:35-1, *et seq.* Asserting a failure of compliance in several particulars with the requirements of that statute in the proceedings thus taken by the debtor to effect his liberation, and the judgment remaining unsatisfied, plaintiff instituted this action against the sheriff under *R. S.* 2:52-1, 2:52-2, 2:52-3, to recover the judgment debt on the hypothesis that thereby the sheriff permitted the debtor to escape. The debtor was later discharged in the Middlesex Court of Common Pleas. The judgment creditor did not appear at the hearing on the petition, nor interpose objection to his discharge.

In the instant action the facts were stipulated. The holding was that there "was a substantial compliance" with the demands of the statute, and judgment was accordingly entered for defendant.

*First:* In the inventory thus delivered to the sheriff, the judgment debtor demanded his discharge "in accordance with the provisions of 'An act for the relief of persons imprisoned on Civil Process' (Revision of 1877)," and the bond contains a recital of the delivery of the inventory under that statute. The insistence is that the Revision of 1937 impliedly repealed the act of 1877, and that, since it was "expressly founded" on the earlier statute, the "application" for a discharge is a nullity. The point is not well-made.

254

The legislature has ordained that the provisions of the Revision of 1937, "not inconsistent with those of prior laws, shall be construed as a continuation of such laws." *R. S.* 1937, 1:1-4. The Revision of 1937 embodies the essence of the cited act of 1877. The evident intention was to invoke the current statute. It was plainly identified by a reference to its original descriptive title; and there was a design to satisfy its requirements. The reference to the source of the act did not under these circumstances serve to nullify the proceedings. There is no contention of fraud or prejudice.

*Second:* It is also urged that the inventory is fatally deficient in that the jurat does not reveal "the official character in which" the subscriber "administered the oath" to the petitioning debtor. We think not.

The signer of the jurat was in fact a master in Chancery and administered the oath in that capacity. As such he signed the jurat to the surety's justification annexed to the bond. The omission from this certificate of the subscribing officer's authority is of no moment unless the statute makes it essential to the validity of the affidavit. *Magowan* v. *Baird,* 53 *N. J. Eq.* 656; *Fitzsimmons* v. *Board of Education of Carteret,* 125 *N. J. L.* 15. This statute does not so provide.

*Third:* The next insistence is that the paper purporting to be the bond is not such "because neither principal nor surety has sealed it."

While it does not appear that seals were actually affixed, the instrument itself states and the *hiis testibus* clause certifies that it was in fact signed and sealed by the makers. This suffices in the circumstances.

True, the term "bond" *ex vi termini* imports a specialty or obligation under seal. *Force* v. *Craig,* 7 *N. J. L.* 272; *Perrine* v. *Cheeseman,* 11 *Id.* 174; *Corlies* v. *Van Note, Admr., &c.,* 16 *Id.* 324; *Ordinary* v. *Connolly,* 75 *N. J. Eq.* 521; *Coral Gables, Inc.,* v. *Kretschmer,* 116 *N. J. L.* 580; *United States* v. *Linn,* 40 *U. S.* 290; 10 *L. Ed.* 742; *Commonwealth* v. *Perry,* 330 *Pa.* 355; *Mahoney* v. *United States Shipping Board E. F. Corp.,* 253 *Mass.* 234; 148 *N. E. Rep.* 454. And it has been held that, even though the writing embodies a recital that the parties have set their hands and seals thereto,

it is not a bond unless it has been actually sealed and delivered. *Taylor* v. *Glaser, 2 Serg. & R.* 502; *Deming* v. *Bullitt,* 1 *Blackf.* 241; *Williams* v. *State, 25 Fla.* 734; 6 *So. Rep.* 831; 6 *L. R. A.* 821; 11 *C. J. S.* 404. "An obligation or bond is a deed whereby the obligor obliges himself, his heirs, executors, and administrators, to pay a certain sum of money to another at a day appointed." 2 *Blackstone's Com.* 340. A "deed" is "a writing sealed and delivered by the parties." *Id.* 295. The distinction between a specialty and a simple contract is not one of mere form. For instance, the statutory limitations upon the rights of action thereon are different. For one class, it is sixteen years; for the other, six years. *R. S.* 2:24-1, 2:24-5.

And *R. S.* 46:13-3 is inapplicable. That statute saves only such unsealed "deeds" or "instruments" of individuals as are "mentioned in section 46:16-1," if there be a recital in the attestation clause or in the acknowledgment or proof that it "was signed and sealed by the makers thereof." The particular instrument is not in this category. *Section* 46:16-1 covers only deeds or instruments "of or affecting the title to real estate." We have not been cited to any statute that imparts this quality to the bond required by *section* 2:35-2. *R. S.* 40:41-23 ordains that "All bonds required by law to be taken by the sheriff shall be recorded in the office of the county clerk in a book to be provided for that purpose, and upon being so recorded, shall have the force and effect of a recognizance." Even though classable as a "recognizance," such bond is not an instrument "affecting" the title to real estate within the intendment of *section* 46:16-1. This would seem to have reference to recognizances taken in civil actions only; and such are not given that attributed by the statute. *R. S.* 2:27-84, *et seq.* . As in the case of the bond prescribed by *R. S.* 2:35-2, these recognizances are given to the plaintiff. *R. S.* 2:27-84, 2:27-89. And they are not made a lien upon the real estate of the recognizor. The statute directs that it shall be filed in the office of the clerk of the court in which the action is pending; and that officer is ordered to execute and deliver a bailpiece to the bail. *R. S.* 2:27-92. As to the purpose of this provision, see *Birdsall* v. *Gardella, 3 N. J.*

*Mis. R.* 772. Recognizances in criminal proceedings have different characteristics; and it is not to be presumed that the legislature had such in contemplation in this regard in the absence of language admitting of no doubt of that purpose. *R. S.* 2:187-1, *et seq.,* 2:187-23, *et seq.*

Yet defendant must prevail. The recital adverted to and the attestation clause unmistakably reveal an intention to seal the instrument, and thus to give it the character demanded by the statute; and by the plainest principles of justice the judgment debtor and his surety are estopped from asserting that the failure so to do rendered it ineffectual as such and therefore the sheriff's release of the debtor was utterly without warrant in the statute and subjected him to the consequences of an involuntary escape. The clearly expressed intention outweighs the mere omission of the seal. This lack is but an irregularity that does not detract from the force of the instrument as one serving the essential statutory purpose. The acknowledgment thus embodied therein and the certificate of the subscribing witness ordinarily would seem to be more persuasive in this regard than the seal itself, for the design to seal the writing may have been lacking. *Vide Coral Gables, Inc.,* v. *Kretschmer, supra.* Where such intent is indubitably revealed in the writing itself, and there is manifested a purpose to comply with the statutory direction for the giving of a bond, and the writing is otherwise sufficient as such, neither the principal nor the surety will be heard to deny that it is devoid of the attributes of a bond within the intendment of the act.

Estoppel must needs be defined in general terms. Lord Coke said: "It is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth." 2 *Coke's Littleton* 352a. An estoppel arises "where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth." *Termes de la Ley, tit.* *"Estoppel."* It is operative where a person "has done some act which the policy of the law will not permit him to gainsay or deny." 1 *Greenl. Evid.* (16th ed.) ch. VI, § 22. See, also, *Demarest* v. *Hopper,* 22 *N. J. L.* 599; *New Jersey*

*Suburban Water Co.* v. *Harrison,* 122 *Id.* 189. It would be a reproach to the law if the debtor or his surety be permitted, after the former's discharge from custody has been effected by the tender of what was represented to be a bond in consonance with section 2:35-2, to escape the contractual burden thus solemnly undertaken on the ground that, for failure of the obligors to affix their seals, the instrument was utterly void as not in conformity with the statute. Compare *Moss* v. *Summit County,* 60 *Utah* 252; 208 *Pac. Rep.* 507; 26 *A. L. R.* 206. One may not in such circumstances accept the benefits of the statute relating to insolvent debtors and thereupon repudiate the obligation so assumed. This is grounded in the rule that one is not at liberty to assume inconsistent positions to the detriment of another. For the circumstances in which the principle has been applied, see 19 *Am. Jur.* 682, *et seq.* Although the instrument in each case was under seal, and so there was a technical estoppel by deed, the general principle was given application in *Seiple* v. *Borough of Elizabeth,* 27 *N. J. L.* 407; *The Inhabitants of Hardwicke* v. *Cox,* 21 *Id.* 247; *State Bank at Elizabeth* v. *Chetwood,* 8 *Id.* 1.

The statute does not lend itself to the interpretation that this bare technical deficiency, at variance with the plainly revealed intention, voids the security as not conforming to the statutory mandate. There is no consideration of policy, grounded in the statute or otherwise, that would make it so. Here, the debtor was in nowise prejudiced by the omission. Such strictness of construction as appellant advances would not serve the spirit of the act. Its object is to abolish imprisonment on civil process where the debtor is willing to deliver up to his creditors all his estate for the satisfaction of his debts. *Steelman* v. *Mattix,* 36 *N. J. L.* 344; *Meleski* v. *Sloan,* 47 *Id.* 82; *Maroney* v. *La Barre,* 77 *Id.* 556. It is a highly remedial act, designed to mitigate the rigor of the law respecting persons arrested upon civil process; and "the widest scope will be given to the language used, in order to carry out what appears to be the legislative intent." *Koch* v. *Burpo,* 91 *Id.* 116. Conformity with its provisions is of course requisite. But such literal observance as serves pure form rather than

the substance is a vain and futile thing; and this the law does not exact. The statute should not be given an interpretation that will defeat its essential object.

*Fourth:* The obligee named in the bond was the sheriff rather than the judgment creditor; and it is urged that this, too, is a fatal departure from the specific directions of *section* 2:35-2. We do not think so.

The bond was given to the sheriff as such in the prescribed penal sum, "to be paid to" the judgment creditor, "or to her said attorney, executors, administrators or assigns." Thus the sheriff took the security for the benefit of the creditor; and thereby an enforceable duty to assign it to the creditor-beneficiary was laid upon him. One for whose benefit a contract is made, whether simple or sealed, has a right of action thereon. *R. S.* 2:26-3.6. *Vide Herbert* v. 'Corby, 124 *N. J. L.* 249; *affirmed*, 125 *Id.* 502; *Woodbridge* v. *DeAngelis*, 125 *Id.* 579. See, also, *Tucker* v. *Davidson*, 28 *Ga.* 535; 11 *C. J. S.* 402.

*Fifth:* It is also maintained that, as regards the bond, there was a failure of compliance with the statute in other particulars which need not be set out.

It suffices to say that in these respects the essence of the statute was observed. An undertaking to "appear before the next Court of Common Pleas to be holden in the County aforesaid and petition said Court for the benefit of the insolvent laws of this state," and "'in all things" to "comply with the requirements of the said insolvent laws," and to "appear in person at every subsequent court until he shall be duly discharged as an insolvent debtor, and if refused a discharge, surrender himself immediately thereafter to the Sheriff or Keeper of the Jail of said County, there to remain until discharged by due course of law," is in conformance with the substance of *section* 2:35-2.

*Sixth:* Lastly, it is said that there was error in receiving in evidence the order of discharge.

The discharge of the debtor was not material to the issue tried. Under the statute, the right of action for an escape does not depend upon the subsequent denial of a discharge. In *Browning's Exrs.* v. *Rittenhouse*, 40 *N. J. L.* 230, this

court found the pertinent principle stated in the following excerpt from the opinion in *Planck v. Anderson*, 40 *T. R.* 36: "There is a difference between cases where a party is in custody in execution, and on mesne process. In the former, a creditor has a right to the body of his debtor every hour until the debt is paid; and, if the prisoner escape, may bring an action of debt upon the statute against the sheriff, in which he *may* (without considering how far he *must*) recover the whole debt."

But the error did not injuriously affect appellant's substantial rights, and so it is not a ground for reversal. *R. S.* 2:27-363.

Judgment affirmed, without costs.